IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| vs.                          ) | Case No. 2:14-cr-282-RDP-JHE |
| ) | |
| SUFYAN HEZAM SALEH,          ) | |
| ) | |
| Defendant.               ) | |

MEMORANDUM OPINION ON CONDITIONS OF RELEASE

The court is taking the unusual step of entering this Memorandum Opinion to explain why it has decided to set conditions of release for the defendant in this cause and to clearly explicate those conditions.

The defendant, Sufyan Hezam Saleh, is a native of Yemen, but a naturalized citizen of the United States. He came to the United States with his step-father and mother at the age of fourteen, and was raised in Oakland, California. In 2007, he moved for only a few months to Memphis, Tennessee, before settling in Birmingham, where he has made his home since. He is presently charged in a four-count indictment with two counts of filing materially false tax returns for tax years 2009 and 2010, one count of acquiring food stamps contrary to the statutes and regulations regulating food stamps,[1] and one count of knowingly redeeming food stamps in a manner contrary to the statutes and regulations regulating food stamps.[2] On the latter count, the indictment alleges that defendant fraudulently redeemed approximately $1,125,772.77 in food stamp benefits in 2010 and 2011.

---

[1] See 7 U.S.C. § 2024(b)(1).
[2] See 7 U.S.C. § 2024(c)

The government has moved for detention of the defendant pursuant to 18 U.S.C. § 3142, arguing that he is a flight risk due to his family connections to Yemen.  It has offered information through the testimony of a pretrial services officer that the defendant has traveled to Yemen on several occasions since 2008 to visit family, and on some of which occasions he has carried large sums of cash.  On a few occasions, immigration authorities were not aware he had left the country, only to discover it upon his return from Yemen.  Defendant acknowledges that he has a wife and three children currently living in Yemen, although he says that he has applied for them to immigrate to the United States.  There is information that his step-father and mother, though US citizens, have returned to and are living in Yemen.  Most concerning is testimony by the pretrial services officer that the immigration authorities have reported to her that from 2002 to 2012, the defendant has regularly sent large sums of money to Yemen.  It was reported that he has sent an average of $30,000 every seven to ten days, which, if true, would be more than $10 million over the last ten years.  Specific transactions involving transfers to Yemen actually reported, however, include only the following:

| Date | Amounts |
|---|---|
| May 2, 2007 | $20,000 |
| May 18, 2007 | $30,000 |
| May 24, 2007 | $30,000 |
| February 22, 2008 | $60,000 |
| April 30, 2010 | $40,000 |
| TOTAL | $180,000 |

Defendant proffered that these payments were made in part as dowry paid to his wife's father and in part as support for his wife and children.

In opposition to the government's motion, the defendant has proffered that he is a US

2

citizen and that he has family and businesses here in the Northern District. He volunteered that he owns several pieces of real estate worth a total of about $500,000 and that he has $85,000 in the bank. He lives with a sister and her two children in a residence on Valley Avenue in Homewood owned by his brother-in-law, whose wife is another of defendant's sisters. The sister and two children with whom he resides are also US citizens. Defendant supports himself with rental income from two properties as well as running a retail store in Sylacauga.

No presumption favoring detention applies to this case. Indeed, 18 U.S.C. § 3142(f)(2) requires proof of detention by clear and convincing evidence. Whether the defendant should be detained depends upon a balancing of the factors identified in § 3142(g), which states:

> **(g) Factors to be considered.**– The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the

> conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

Examining these factors, it is clear that the offenses charged against the defendant do not involve a firearm, controlled substances, a minor victim, a terrorist offense, or a crime of violence. The weight of the evidence against the defendant is unclear because the government chose not to offer any evidence with respect to the actual charged offenses. Likewise, the government does not content that the defendant is a danger to anyone or to the community generally, and the nature of the charges against him do not suggest that he is a danger.

   The question in this case is whether there is a reasonable possibility that the defendant will flee the United States, possibly to Yemen, to avoid prosecution. Because the defendant has no criminal history, he was not under any form of supervision at the time of the alleged offenses, nor does he have any history of making court appearances. Therefore, the only factors that remain relevant to the detention analysis are "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, [and] history relating to drug or alcohol abuse…." These factors seem to cut both ways. Looking at the factors favorable to him, there is nothing before the court (except perhaps the charges against him) suggesting anything negative about his character. It appears he came to this country as a teenager and has worked hard to make something of himself. He has succeeded, now owning real property estimated to be worth more than $500,000 and having $85,000 in cash in the bank, not to mention the apparently large sums of money he has sent to Yemen. He has family ties and business ties in the Birmingham community, where

he has lived for more than seven years. There is no indication that he has any mental or physical infirmities or that he has drug or alcohol problems. His Muslim upbringing suggests he does not use alcohol or drugs at all.

Many of these factors, however, can be viewed as raising concerns about the defendant being a flight risk. He has the financial wherewithal to flee, and he has a place and family to flee to in Yemen. He has very close ties to Yemen, having sent large sums of money to someone there. His business and property ties to the Northern District are threatened by the Notice of Forfeiture in the indictment, lessening his incentive to stay in order to preserve such interests.

On balance, however, the court finds that there are conditions of release under which the court can reduce the risk of flight while allowing the defendant the freedom to consult with counsel and pursue legal business interests. Accordingly, by separate Order Setting Conditions of Release, the court will set the following conditions for the defendant's release from custody:

1. The execution of a bond in the amount of $500,000, which shall be secured in the following manner:

    a. Defendant must execute and record in appropriate land records a mortgage by which he conveys to the "Clerk of Court for the United States District Court, Northern District of Alabama" a recognized security interest in his real property, including a right of foreclosure and power of sale, to secure the faithful payment of the bond in the event it is forfeited;

    b. Defendant shall cause $50,000.00 to be posted and deposited with the Clerk of Court;

    c. Solvent sureties owning an interest in real property worth at least $30,000 shall execute the bond with defendant; and

    d. Solvent sureties shall post with the Clerk of Court gold jewelry worth at least $30,000, together with an agreement to forfeit the jewelry in the event the defendant's bond is forfeited due to nonappearance. Such jewelry must be accompanied by a detailed inventory and description of each piece of jewelry, a photograph of each piece of jewelry, and a reputable appraisal of the nature and value of each piece of jewelry. Upon posting of the jewelry with the Clerk, the

    Clerk shall provide the posting sureties with a signed receipt incorporating as exhibits to the receipt copies of the inventory, photographs, and appraisal. Upon lawful exoneration of the bond, the jewelry will be returned to the sureties.

2. The standard conditions of release set out in paragraphs 1 through 6 of the standard Order Setting Conditions of Release.

3. Location monitoring using GPS technology.

4. Travel limited to the Northern District of Alabama, except with prior permission of the court or probation officer.

5. A curfew requiring the defendant to be at his residence except during reasonable hours necessary for working or operating his business

6. Seek or maintain employment.

7. Refrain from possessing a firearm, destructive device, or dangerous weapon, including consent to allow the United States Marshals Service or the United State Probation Office to search defendant's person, automobile, and residence for firearms.

8. Defendant shall surrender his passport to the probation officer.

9. Defendant shall refrain from transferring, wiring, shipping, mailing, or otherwise sending out of the United States any sum of money greater than $500 per month without the express permission of the court or probation officer.

The Clerk is DIRECTED to prepare a standard Order Setting Conditions of Release with these conditions of release, and to set the matter in the courtroom so that the court can review with and explain the conditions of release to the defendant. Defendant will be released from custody only upon completion of each condition.

DONE this 11th day of February, 2015.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE